IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 23-cr-00074-NYW

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. DEJANE REANIECE LATTANY,

        Defendant,

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Nicole C. Cassidy and Rebecca S. Weber, Assistant United States Attorneys for the District of Colorado, and the defendant, Dejane Reaniece Lattany, personally and by counsel, Jason Flores-Williams, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A.**     **Defendant's Plea of Guilty:**

The defendant agrees:

(1)     to waive indictment and plead guilty to a single-count Information, charging a violation of 18 U.S.C. § 1343 (wire fraud);

(2)     to waive certain appellate and collateral attack rights, as explained in detail below;

**COURT EXHIBIT 1**

(3) that the intended loss amount for purposes of the guideline calculation is more than $3.5 million, but less than $9.5 million;

(4) to be liable for restitution to the SBA and participating lenders in the amount of $3,437,072.81[1], plus interest accruing through the date of the sentencing hearing and minus the value of the property seized listed below, with additional information about apportionment between the SBA and participating lenders being provided at the sentencing hearing; and

(5) agrees and consents to the forfeiture of the following assets pursuant to any federal criminal, civil, and/or administrative forfeiture action: 11125 Quintero Court, Commerce City, Colorado, 80022; $17,344.39 seized from Sunflower Bank Checking Account #1100035300; 2009 Hummer Sut Luxury, VIN: 5GRGN02279H100429; 2008 Hummer Utility Passenger Vehicle, VIN: 5GRGN23828H101341; and $945,572.89 seized from Canvas Credit Union Checking Account # 626207 (Civil forfeiture action 22-cv-1351).

**B. The Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado concerning fraud against the government

---

[1] As explained in detail below, the $3,437,072.81 restitution amount is comprised of: (1) $3,337,476.94 that Lattany received from her fraudulent Economic Injury Disaster Loan ("EIDL") and Paycheck Protection Program ("PPP") loan applications; (2) the PPP processing fees totaling $99,095.87 that the SBA paid to the third-party lenders in connection with Lattany's fraudulent PPP loans; and (3) the $500 of UCC filing fees that the SBA incurred in connection with Lattany's fraudulent EIDL loans.

2

programs described below. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, file an indictment with additional charges.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

As to sentencing, the government agrees to recommend a sentence at the bottom of the guidelines range, as calculated by the Court. The defendant is free to file a motion for a variance under 18 U.S.C. §3553(a).

**C.     Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)   the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 1343;

(2)   the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 24; or

(3)   the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how her sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number. The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that "extraordinary and compelling reasons" for a sentence reduction are lacking or that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

**D.    Forfeiture of Assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and

Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to:

(a) all right, title, and interest in and to the following real property: Real Property Located at 11125 Quintero Court, Commerce City, Colorado, 80022, more fully described as:

LOT 26, REUNION FILING NO. 23, CITY OF COMMERCE CITY, COUNTY OF ADAMS, STATE OF COLORADO, ACCORDING TO THE RECORDED PLAT THEREOF.

(b) $17,344.39 seized from Sunflower Bank Checking Account #1100035300;

(c) 2009 Hummer Sut Luxury, VIN: 5GRGN02279H100429;

(d) 2008 Hummer Utility Passenger Vehicle, VIN: 5GRGN23828H101341;

(e) $945,572.89 seized from Canvas Credit Union Checking Account # 626207; and

(f) a money judgment in the amount of proceeds obtained by the scheme and by the defendant—which is $3,337,476.94[2]—which will be credited with any net proceeds obtained from judicially forfeited assets.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to her if notice is not sent within the prescribed time frames.

---

[2] No interest or lender processing fees have been included in this amount.

The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offense, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met. The defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the wire fraud offense charged in the single-count Information are as follows:

    A.    The defendant devised a scheme to defraud;

    B.    The defendant acted with specific intent to defraud;

    C.    The defendant used, or caused another person to use, interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

      D.      The scheme employed false or fraudulent pretenses, representations, or promises that were material.[3]

### III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of 18 U.S.C. § 1343 is: not more than 20 years of imprisonment, a fine of not more than the greater of $250,000 or twice the gain or loss from the offense, or both; not more than 3 years of supervised release; a $100 mandatory victim's fund assessment fee; plus restitution in an amount to be determined at the time of sentencing.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts that may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct.

---

[3] Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2021 Edition, § 2.57.

### Background about the PPP and EIDL Programs under the CARES Act

The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which provided emergency assistance, administered by the SBA, to small business owners suffering adverse economic effects caused by the Coronavirus ("COVID-19") pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA. Two sources of funding for small businesses were the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") program. The CARES Act mandated that only businesses in operation on February 15, 2020, for PPP, or before February 1, 2020, for EIDL, were eligible under the programs.

The EIDL program was an SBA program that provided low-interest financing to small businesses in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances, known as Economic Injury Disaster Grants ("EIDG"), of up to $10,000 to small businesses. The amount of the EIDG was determined by the number of employees listed on the EIDL application, and the EIDGs did not need to be repaid.

Until April 2021, under the EIDL program, a small business could receive a loan from the SBA in an amount of up to six months of working capital with a maximum of $150,000. Thereafter, in April 2021, the SBA increased the EIDL limit to allow small businesses to receive

loans in the amount of up to 24 months of working capital with a maximum of $500,000. In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, including the business's gross business revenues and cost of goods sold in the twelve months prior to January 31, 2020. The amount of the loan, if approved, was determined based on the information provided concerning the gross revenue and cost of goods sold. For loans greater than $25,000, the SBA withheld a $100 fee from the total EIDL loan amount for filing a UCC-1 lien on the borrower's business assets. EIDL and EIDG funds were issued directly by the SBA and could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rents, and mortgage payments.

The CARES Act further authorized the PPP program, which provided forgivable loans to small businesses. To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses.

PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the

loan. The SBA paid participating lenders a processing fee for each funded PPP loan for underwriting and servicing the loan.

The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, and utilities. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, real estate, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

Small businesses could request forgiveness of up to the full amount of the PPP loan by filing a forgiveness application with the same lender. The forgiveness application required the business to certify, among other things, that the loan was used for eligible payroll and other business costs, and that the business had verified the eligible payroll and nonpayroll costs for which the business requested forgiveness. The business also was required to submit documentation to the lender verifying its payroll costs.

### Lattany's Scheme to Defraud

From at least June 2020 through at least January 2022, Lattany knowingly and with an intent to defraud devised a scheme to defraud and to obtain money from the United States and from participating PPP lenders by means of materially false and fraudulent pretenses, representations, and promises that was based on submitting false and fraudulent EIDL and PPP applications (hereinafter referred to as the "Scheme").

### Lattany Obtained Fraudulent EIDL Loans

From in or around June 2020 through in or around January 2022, LATTANY prepared and submitted fraudulent EIDL applications to the SBA in her own name as a sole proprietorship

and on behalf of the following business entities that she purportedly owned and operated: Aggies Angel Care Providers, A&L Care Systems, IGU Management, Mind Set Consulting, NB Marketing, Open Arms Secure Watch LLC, and Rocky Ridge Consulting.

In these fraudulent EIDL applications, Lattany knowingly and with the intent to defraud made materially false statements regarding the entities' number of employees, gross revenues, and cost of goods sold in the twelve months prior to January 31, 2020. In the loan agreements, Lattany falsely certified that the information provided in the EIDL applications was true and accurate and that the funds would be used for permissible expenses when, in fact, she used the bulk of the proceeds for her personal benefit.

As shown in the chart below, the SBA approved and funded five EIDL applications and three EIDGs for a total of $430,000 in EIDLs and $20,000 in EIDGs. These funds, minus a $100 processing fee for each EIDL that was paid by the SBA, were sent to bank accounts controlled by Lattany.

| Application Date | Application Number | Loan Number | Company | Date Approved | Funded EIDGs | Funded Loan Amount |
|---|---|---|---|---|---|---|
| 6/1/2020 | 3304295154 | 8049517906 | Aggies Angel Care Providers | 6/18/2020 | $10,000 | $84,500 |
| 6/15/2020 | 3304629629 | 8720497910 | AACP | 6/25/2020 | $3,000 | $47,000 |
| 6/22/2020 | 3305901608 | 3905328001 | Mind Set Consulting | 6/25/2020 | $7,000 | $114,000 |
| 6/24/2020 | 3306433077 | 6894628103 | IGU Management | 7/22/2020 | | $111,500 |
| 6/29/2020 | 3307426220 | 7769818107 | NB Marketing | 7/24/2020 | | $73,000 |
| | | | | Total | $20,000 | $430,000 |

In addition to the five EIDLs and 3 EIDGs that were actually funded, the SBA had

quoted loan amounts totaling $3,071,200 during the initial loan application process for ten additional fraudulent EIDL applications and two additional fraudulent EIDL modifications that were ultimately declined, and the SBA declined Lattany's request for an additional $34,000 of EIDGs.

| Application Date | Application Number | Company | Unfunded EIDGs | Unfunded EIDL Amounts |
|---|---|---|---|---|
| 6/15/2020 | 3304612987 | Aggies Angel Care Providers | $10,000 | $500,000 |
| 6/24/2020 | 3306433077 | IGU Management | $7,000 | |
| 6/29/2020 | 3307426220 | NB Marketing | $7,000 | |
| 7/8/2020 | 3309460626 | Dejane Lattany (Sole proprietorship) | $10,000 | $83,600 |
| 7/12/2020 | 3310376033 | Dejane Lattany (Sole proprietorship) | | $83,600 |
| 8/7/2020 | 3313005137 | De Jane Lattany (Sole proprietorship) | | $39,000 |
| 9/22/2020 | 3314664309 | Rocky Ridge Consulting | | $500,000 |
| 12/7/2020 | 3315518965 | Open Arms Secure Watch LLC | | $500,000 |
| 12/27/2020 | 3315784860 | Open Arms Secure Watch LLC | | $500,000 |
| 1/1/2021 | 3315940770 | Dejane Lattany (Sole proprietorship) | | $54,000 |
| 2/8/2021 | 3317010862 | A&L Care Systems | | $150,000 |
| 2/8/2021 | 3317012812 | Mind Set Consulting | | $500,000 |
| 1/1/2022 | 3304629629 | AACP | | $47,000 (requested modification for EIDL Loan No. 8720497910) |
| 1/1/2022 | 3305901608 | Mind Set Consulting | | $114,000 (requested modification for EIDL Loan No. 3905328001) |
| | | Total | $34,000 | $3,071,200 |

The total amount of the EIDL and EIDG applications, funded and unfunded, attributed to Lattany is therefore $3,555,200. The parties agree that the appropriate measure of loss in this case includes these unfunded loan amounts.

12

Lattany Obtained Fraudulent PPP Loans

From in or around June 2020 through in or around December 2021, Lattany prepared and submitted fraudulent PPP applications to participating lenders in her own name as a sole proprietorship and on behalf of the following business entities that she purportedly owned: Aggies Angels Care Providers and A&L Care Systems. These PPP applications contained a number of materially false and fraudulent certifications and representations regarding, *inter alia*, Lattany's ownership of other businesses, as well as the businesses' average monthly payroll and number of employees. Lattany further falsely represented that all PPP funds would be used to pay eligible business expenses, when, in fact, proceeds were used for Lattany's personal benefit. Lattany also submitted false and fraudulent documentation in support of the PPP applications to the participating lenders, including fabricated payroll and tax documentation.

As set forth in the chart below, the third-party lenders approved and funded ten of these PPP loans, resulting in $2,887,976.94 being paid out to entities that Lattany controlled. The SBA also paid $99,095.87 in processing fees to the third-party lenders for underwriting and servicing these PPP loans. Lattany also sought, and obtained, loan forgiveness for three PPP loans by submitting loan forgiveness applications in which she made materially false representations and certifications regarding her businesses and her compliance with the PPP program rules, including rules related to the eligible uses of PPP loan proceeds.

| Loan Number | Company | Lender | Date Approved | PPP Loan Amount | PPP Processing Fees | Forgiveness Date |
|---|---|---|---|---|---|---|
| 28579880-00 | Aggies Angels Care Providers | WebBank | 6/24/2020 | $32,500.00 | $1,615.00 | 7/29/2021 |
| 28456280-00 | Aggies Angels Care Providers | Itria Ventures LLC | 6/24/2020 | $32,300.00 | $1,625.00 | 7/9/2021 |

| 26862385-04 | Aggies Angels Care Providers | Itria Ventures LLC | 2/24/2021 | $48,377.50 | $2,500.00 | |
| --- | --- | --- | --- | --- | --- | --- |
| 34607585-09 | Aggies Angel Care Providers | Itria Ventures LLC | 3/1/2021 | $327,732.50 | $16,386.63 | |
| 66487487-08 | Aggies Angels Care Providers | American Lending Center | 4/4/2021 | $532,820.82 | $15,984.62 | |
| 87877785-09 | Dejane Lattany (Sole Proprietorship) | Newtek Small Business Finance, Inc. | 4/8/2021 | $20,800.00 | $2,500.00 | 12/28/2021 |
| 63363188-07 | A&L Care Systems | American Lending Center | 4/19/2021 | $666,666.65 | $20,000.00 | |
| 76845990-01 | A&L Care Systems | American Lending Center | 5/26/2021 | 666,666.65 | $20,000.00 | |
| 52646190-10 | Aggies Angels Care Providers | American Lending Center | 5/22/2021 | $532,820.82 | $15,984.62 | |
| 82537484-08 | Aggies Angels Care Providers | Customer's Bank | 2/13/2021 | $27,292.00 | $2,500.00 | |
| | | | Total | $2,887,976.94 | $99,095.87 | |

In addition to the ten PPP loans that were actually funded, Lattany also submitted another two PPP loan applications for PPP loans that were not funded but had quoted amounts totaling $895,832.00. The total amount of the PPP applications attributed to Lattany, funded and unfunded, is therefore $3,783,808.94.[4]

| Application Date | Company | Lender | Unfunded PPP Loan Amounts |
| --- | --- | --- | --- |
| 3/8/2021 | Dejane Lattany (Sole Proprietor) | WebBank | $20,833.00 |
| 3/17/2021 | A&L Care Systems | Itria Ventures LLC | $874,999.00 |
| | | Total | $895,832.00 |

---

[4] The total amount of the EIDL, EIDG, and PPP applications, funded and unfunded, attributed to Lattany is $7,339,008.94. The parties agree that intended loss is the appropriate measure of loss for purposes of the guideline calculation.

14

Lattany understands and agrees that she has an obligation to pay restitution on the amount of the funded EIDL and PPP loans (including the PPP loans that ultimately received loan forgiveness), as well as the $100 UCC fee paid by the SBA on each EIDL and the PPP processing fee paid by the SBA on each PPP loan. The total amount of restitution is currently estimated to be $3,437,072.81. Lattany also agrees to pay the amount of interest accruing on these loans through the date of sentencing. Final interest figures, as well as information regarding the apportionment of restitution between the SBA and third-party lenders, will be presented at the time of sentencing.

**Interstate wire:** On or about June 19, 2020, the SBA in Denver, Colorado created and certified the payment file for a loan to Lattany's purported company Aggies Angel Care Provider and transmitted it via interstate wire communication from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute. The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government also has an independent obligation to assist

the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

- A. The base guideline is § 2B1.1, with a base offense level of 7. § 2B1.1(a)(1).

- B. An 18-level increase applies because the loss was more than $3,500,000 but less than $9,500,000. §2B1.1(b)(1)(J).

- C. A 2-level increase applies because the defendant derived more than $1,000,000 in gross receipts from one or more financial institution as a result of the offense. § 2B1.1(b)(17)(A).

- D. The adjusted offense level is 27.

- E. The defendant should receive a 3-level downward adjustment for timely acceptance of responsibility. The resulting total offense level is 24. §§ 3E1.1(a)–(b).

- F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

- G. The career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.  The advisory guideline range resulting from these calculations is 51–63 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 51 months (bottom of Category I) to 125 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I.  Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and penalties.

J.  Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

K.  Pursuant to guideline §5E1.1(a)(1), the Court shall enter a restitution order for the full amount of the victims' losses, which the parties agree will be an amount of $3,437,072.81, plus interest accruing through the date of the sentencing hearing.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement.  There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

| | |
|---|---|
| 4/26/23 | *[signature]* |
| Date | DEJANE REANIECE LATTANY |
| | Defendant |
| | |
| 4.26.27 | *[signature]* |
| Date | JASON FLORES-WILLIAMS |
| | Attorney for Defendant Lattany |
| | |
| 4/26/2023 | *[signature]* |
| Date | NICOLE C. CASSIDY |
| | Assistant U.S. Attorney |
| | |
| 4/26/23 | *[signature]* |
| Date | REBECCA S. WEBER |
| | Assistant U.S. Attorney |